DAVIS FORSTER, *et al.,* Individually and as Board of Commissioners of Daytona and New Smyrna Inlet District, *et al.,* v. J. P. ESCH, *et al.*

152 So. 444.
Division A.
Opinion Filed December 29, 1933.
Rehearing Denied February 7, 1934.

*Sholtz, Green & West* and *Hull, Landis & Whitehair,* for Appellants;

*Stewart & Stewart,* for Appellees.

ELLIS, J.—A supplemental amended bill was filed in this case November 12, 1930. The original bill was filed in March, 1928, and in July of that year a second amended bill was filed. The relief which these various bills sought and the theory upon which they rested are sufficiently set out and discussed in the cases of Esch v. Forster, 99 Fla. 717, 127 South. Rep. 336, and New Smyrna Inlet Dist. v. Esch, 103 Fla. 24, 137 South. Rep. 1, rehearing in the latter case was denied, 103 Fla. 31, 138 South. Rep. 49.

Testimony was eventually taken under the original and second amended bills and answers interposed thereto, after which this supplemental amended bill was filed because the testimony as taken showed that money which the defendants, Forster, Baggett and Paul, constituting the Board of Commissioners of Daytona and New Smyrna Inlet District, received had either been paid out and distributed by them for services rendered to the District or had been turned over to the New Smyrna Inlet District created at the Extraordinary Session of the Legislature of 1929 by Chapter 14503 and that the transfer of moneys had been made before the reversal of the decree in April.

It was alleged that such disbursement and surrender of the moneys collected by the tax levy of 1926, which amounted to the sum of $153,543.88, were illegal as being without any authority of law. In this new bill the same point is contended for as in the original and amended bills, that the Board of Commissioners was an illegal body with no authority of law to justify its existence and the money derived from the so-called tax levied was illegally obtained from the taxpayers so that the members of the so-called Board of Commissioners were merely trustees of that money for the benefit of the taxpayers of County Commissioner Districts 4 and 5 of Volusia County, which territory constituted the District.

It was also alleged that Chapter 14503, Laws of Florida, Extraordinary Session of 1929, is illegal and that the defendants, Forster, Baggett and Paul, could not relieve themselves of liability for the return of the illegally collected money to the taxpayers who paid to them by transferring the money to the New Smyrna Inlet District. See Stewart v. New Smyrna Inlet Dist., 100 Fla. 1126, 130 South. Rep. 575; New Smyrna Inlet Dist. v. Esch, *supra*.

The bill also alleges that the defendants paid to David Sholtz, A. A. Green and Roger West, a firm of lawyers, large fees for services and to Gilbert A. Youngberg a large sum; that the defendants turned over to W. P. Preer, J. A. Rogers, Herbert Frederick, L. L. Mosby and David Forster, Commissioners of New Smyrna Inlet District, sixty-eight thousand five hundred and ninety dollars and thirty-two cents of the funds of Daytona and New Smyrna Inlet District together with negotiable securities for the security of the deposits made in the several banks and that those last named Commissioners of New Smyrna Inlet District have paid money to Sholtz, Green and West and to George

I. Fullerton and James Gillespie composing the firm of Fullerton and Gillespie, two thousand five hundred dollars, also another sum to Gilbert A. Youngberg.

It is alleged that when the Commissioners of New Smyrna Inlet District received the money and securities from the Commissioners of Daytona and New Smyrna Inlet District the amount received was one hundred and fifteen thousand nine hundred and ninety-five dollars and seventy-eight cents ($115,995.78) which has been reduced by the spending of money for legal services and other unnecessary expenses. The complainants set up a claim for a reasonable compensation for their services in protection of the fund.

By an amendment made to the supplemental bill, amended on January 6, 1932, D. C. Hull, Erskine W. Landis and Francis P. Whitehair, constituting the law firm of Hull, Landis & Whitehair; New Smyrna Inlet District; W. P. Wilkinson; W. P. Preer and J. A. Rogero, constituting a Board of Trustees of the last named District, were made parties defendant to the cause.

The amendment alleged that the Board of Commissioners of the new District, after the Supreme Court in the case of Stewart v. New Smyrna Inlet Dist., *supra,* had decided that Chapter 14503, Laws 1929, was invalid, engaged the legal services of the said law firm and paid that firm a large fee for such services out of the funds on hand; that the New Smyrna Inlet District, through its Commissioners, had deposited funds of the District in the Fidelity Bank of New Smyrna, which Bank is now in the hands of a Liquidator, who is E. L. Mickle, for the purpose of winding up its business and that he at this time has in his hands certain of the moneys involved in this litigation. A receiver is also asked for to take possession of and hold all the funds purporting to belong to the said District subject to the further order of the court.

This litigation has continued for several years and a large volume of documents consisting of pleadings, affidavits and testimony taken has been accumulated. There have been six Acts of the Legislature and three or ·four decisions of the Supreme Court relating to the District and. the subject matter of this controversy.

It may be in the interest of clarity to give briefly the legislative and judicial history of the District and the funds involved in chronological order. First, in the year 1925, Special Act, Chapter 10448, the Legislature attempted to create a Special Tax District to be known as "Daytona and New Smyrna Inlet District" to consist of the territory then embraced within the territorial boundaries of County Commissioners Districts numbered Four and Five in Volusia County. The governing body was to consist of three members to be known as the "Board of Commissioners" of the District. The purpose of the Act was to construct and maintain an inlet connecting the waters of the Indian River and Halifax River with the Atlantic Ocean. The Board was authorized to levy a tax not to exceed five mills on the dollar on the real and personal property in the District for the year 1926, and subsequent years. The Board was authorized to borrow money on permanent loans and incur obligations from time to time on such terms and at such rates as the Board deemed proper, not exceeding six per cent. per annum and was authorized to issue bonds in the sum of one million five hundred thousand dollars.

Second, at an extraordinary session of the Legislature in November, 1925, Chapter 11791 was enacted. Its purpose was to amend and re-enact Chapter 10448. The name, territory, purpose and powers of the former Act were retained. Bennett, Forster and Paul were named to serve as Commissioners until January, 1927. It attempted to

validate all acts and proceedings done under the former Act and repealed all laws in conflict with its provisions.

Third, in 1929 Chapter 14503 was enacted. The purpose of that Act was to abolish the Daytona and New Smyrna Inlet District and to create the New Smyrna Inlet District. The New District consisted of County Commissioners District No. 5. It will be seen that a new district was created both in name and territory, but it was provided that the new district should succeed to all the "title, rights and ownership of property, collected and uncollected taxes, dues, claims, judgments, moneys, decrees and choses in action held or owned by the Daytona and New Smyrna Inlet District." There was a slight change in the language describing the purpose of the new district. Chapter 10448 as amended and re-enacted by Chapter 11791, *supra,* was repealed. The new district was empowered to issue bonds in the sum of two hundred and fifty thousand dollars. The old district was required to pay over to the new for its use all sums of money in the possession of the old district which were under its control and which it had collected through means of taxation or otherwise. It was authorized to levy a tax of eight mills on the dollar and a maintenance tax of one mill.

The Act was to take effect subject to ratification at an election to be held in the district by the qualified voters of the district who were freeholders. That provision of the Act was termed a referendum to be called by the Commissioners of the district named in the Act.

Fourth, in 1931 the Legislature, by Chapter 14771, created another district by the name of New Smyrna Inlet District with the same purpose but fuller and greater powers both in the matter of levying taxes and borrowing money. The name Commissioners was changed to "Board of Trustees" and the Act repealed all laws and parts of laws in

conflict with its provisions "including Chapter 10448, Special Laws of Florida, Acts of 1925, and Chapter 11791, Laws of Florida, Acts of Extraordinary Session of 1925, and Chapter 14503, Laws of Florida, Acts of 1929." That Act was approved June 11, 1931.

Fifth, at the same session of the Legislature of 1931, Chapter 14769 was enacted purporting to validate taxes levied and collected under Chapters 10448, 11791 and 14503, *supra,* and requiring the Board of Commissioners of the old district to deliver to the Board of Trustees of the new district all money, funds and property which had been collected by the Board from the taxpayers of County Commissioners District No. 4.

Sixth, at the same session Chapter 14770 was enacted to validate the levy and collection of all taxes under Chapter 10448, 11791 and 14503, *supra,* as the same applied to County Commissioners District No. 5 and to require the payment of the same over to the Board of Trustees of the new district. Neither of the two last named Acts were approved by the Governor.

In the case of New Smyrna Inlet District v. Esch, *supra,* this Court said, speaking through Mr. Justice WHITFIELD:

"Chapter 11791 became innocuous because of its illegal taxing provisions, and its attempted amendment by Chapter 14503 failed because of the invalid referendum provision of the latter Act. Suit had been brought by taxpayers for an accounting and a return of the illegal taxes collected from them respectively. The property rights of taxpayers to maintain the suit to recover the illegal taxes, cannot be cut off by Chapters 14765 (14769) and 14770 which purport to validate the tax levies and to have the proceeds of the tax delivered to a taxing district created by Chapter 14771, which latter statute does not amend or continue in force, but expressly repeals Chapter 11791 under

which the tax was illegally levied and collected. Even if the public improvement contemplated by Chapter 14771, Acts of 1931, is in substance and locality similar to that projected by Chapter 11791, Acts of 1925, Ex. Sess., the district created in 1931 for making the public improvement is wholly distinct from that created in 1925 and the present district covers only a part of the territory, with distinctive powers and duties to be exercised in providing the public improvement. Chapter 14771 does not amend and continue in force Chapter 11791, but expressly repeals Chapters 10448, 11791, and 14503."

So it will be seen that Chapters 11791 and 14503, *supra,* were held to be invalid and Chapters 10448, 11791 and 14503, *supra,* were expressly repealed by Chapter 14771, *supra.* It was further held that the validating Acts did not affect the right of the tax "payers in their long pending suit for an accounting and return of the illegal tax collections by a statutory district that no longer exists," and that the district created in 1931 by Chapter 14771 is wholly distinct from the one created in 1925, Chapter 10448, *supra.* See also Stewart v. New Smyrna Inlet Dist., *supra;* Esch v. Forster, *supra;* Stewart v. Daytona and New Smyrna Inlet Dist., 94 Fla. 859, 114 South. Rep. 545; New Smyrna Inlet District v. Esch, *supra.*

So after all the legislative trials and legal activities and expenditure of brain and physical energy to place a heavy burden on the people of County Commissioners District No. 4 in Volusia County Chapter 14771, Laws of 1931, alone remains in force or of any validity.

The answer interposed by Forster, Baggett and Paul, David Sholtz and A. A. Green, George I. Fullerton and James Gillespie and Gilbert A. Youngberg, set up as a defense in substance that Chapter 14503, *supra,* was a valid Act and in force when the tax was levied under Chapter

11791 which did not render such levy invalid as the power existed under Chapter 14503 to levy such tax and the old district was not bound by a recitation merely that the tax was levied under the provisions of Chapter 11791, *supra*. That Chapter 10448, *supra,* had been ratified and approved by the voters in such manner as to be effective and operative and the Board of Commissioners was duly elected, organized and began to properly function long prior to the going into effect of Chapter 11791, *supra,* which has never been made known to the Court; that the Commissioners were duly elected and qualified under the terms of the Act and entered upon the discharge of their duties.

By those averments the point is made that the money derived from the tax levied and which the complainants seek to recover in these proceedings was not an invalid or illegal tax but was justified by the provisions of Chapter 10448, *supra,* which was in full force and effect at the time, which being true the complainants are not entitled to the relief prayed.

It is also averred that Chapter 14771, *supra,* insofar as it attempts to repeal Chapters 10448 and 11791, *supra,* is void, because such purpose is not expressed in the title. (The reference to Chapter 14471 in the answer is an error. The pleader probably intended to refer to Chapter 14771, *supra.*)

The contention is also made in the answer that the defendants acted in good faith as shown by the public sentiment existing in the community to establish a district for the purpose designed by the Acts of 1925 and subsequent Acts, and proceedings taken thereon in the matter of advice of counsel; that the Board of Commissioners under both Acts of 1925 expended money and incurred liabilities which under the terms of the Acts it was their duty to do; that in the matter of issuing bonds the law firm of Sholtz, Green

and West was engaged for its legal advice and services in the validation of the bonds for the district which it is contended were valid under the provisions of Chapter 10448 even if Chapter 11791, *supra,* was invalid; that the Board of Commissioners, acting in good faith and believing that it had the power to function as such under Chapter 10448, *supra,* as well as Chapter 11791, *supra,* paid to Sholtz, Green and West and to G. A. Youngberg for services and expenses and to themselves as per diem and mileage a large sum of money amounting to approximately fifteen thousand seven hundred dollars, and that they had paid other obligations against the district amounting to approximately ten thousand three hundred and ninety dollars on advice of counsel and at the request of the Board of Commissioners of the district under Chapter 14503, *supra.*

Mr. Green, answering in his own behalf, urges the point that it was the duty of the Trustees of the District to obey the requirements of the statutes as they found them before they were declared to be invalid, and therefore the Trustees should not be charged with funds so disbursed nor should he be required to account to complainants for sums paid to him, and that the law firm of Sholtz, Green and West should be allowed some compensation for defending the fund in the hands of the Trustees.

Gilbert Youngberg sets up in the answer a defense on the same grounds justifying his employment as chief engineer for the district. Fullerton and Gillespie set up in the answer a defense for their employment as counsel and justify it upon the same grounds.

The New Smyrna Inlet District and the Commissioners, Preer, Rogero, Frederick and Mosby, answer averring the legality of Chapter 11791, *supra,* and that the district was in existence until the Act was repealed. They aver that they are without knowledge as to many of the material

allegations of the bill; that the money in their hands came into their possession before Chapter 14503, *supra,* was held to be invalid and denied that the amount alleged in the bill which came into their hands was the correct amount and that they have paid the same over to the Trustees of the New Smyrna Inlet District; that in November they employed Hull, Landis and Whitehair to represent them in this suit before Chapter 14503, *supra,* was held to be invalid.

Answer was also filed by New Smyrna Inlet District as created by Chapter 14771, *supra,* and Wilkinson, Preer and Rogero as constituting the Board of Trustees and in their individual capacity. Likewise answers were filed by Mickle as Liquidator of the Fidelity Bank of New Smyrna, also by Hull, Landis and Whitehair.

All of the answers and each separately constitute a large part of the record and are prolix and replete with averments which set up with meticulous care the details of the transactions and activities of the Commissioners of the various districts and the Board of Trustees, lawyers and engineers. They do, however, set up the defense succinctly stated that a district was created by Chapter 10448, *supra,* and Chapter 11791 and Commissioners were duly selected and proceeded to discharge their duties under the terms of the Acts; that money came into their hands by virtue of their offices and some of it was disbursed in good faith and in an effort to discharge their duties under the law, which they were bound to enforce until the same was declared invalid. The answers were of such character that it cannot be said that they could have no influence in the decision of the suit as to the relief to be given.

The complainants on the 9th of February, 1932, moved for a decree on the supplemental bill as amended and the answer of Forster, Baggett and Paul individually and as

members of the Board of Commissioners of Daytona, New Smyrna Inlet District and Forster individually and as members of New Smyrna Inlet District, Sholtz, Green and West and Fullerton and Gillespie and Gilbert Youngberg. And on the same day a similar motion was made as to the New Smyrna Inlet District and Preer, Rogero, Frederick and Mosby and on March 9, 1932, a like motion as to the answers of Wilkinson, Preer and Rogero individually and as the Board of Trustees of New Smyrna Inlet District and Mickle as Liquidator of the Bank and on April 15, 1932, a like motion was made as to answer of Hull, Landis and Whitehair.

Objections were filed to the hearing on those motions because the case was never set down for hearing on bill and answer; that complainants did not set it down on bill and answer within ten days after filing of the answers as required by Chapter 14658, Laws 1931; that under the rule the cause was at issue on the answers. In substance that the applicable section of the Chancery Act of 1931, Chapter 14658, was not observed.

The objections were overruled on the 3rd day of May, 1932, and on the 18th day of June, 1932, the court made an order holding the answers to be insufficient and not amendable, granting the relief prayed for, appointing a special master to receive testimony as to the total receipts by the defendants of the tax assessed and collected and authorizing him to call in the services of an auditor to make a comprehensive statement of account of the receipt of the fund by each of the several defendants and the amount of money disbursed by them.

It decreed attorneys' fees for the complainants to be determined later as to reasonableness and to be paid out of the trust fund.

D. P. Smith, as tax collector and individually, was ordered to make an itemized statement of all taxes collected of those assessed in Daytona, New Smyrna Inlet District for the year 1926, for the payment of principal and interest on bonds not issued showing the person and address from whom collected and amount paid. The decree contained a provision that the court was not determining the liability of the several defendants as to that portion of the fund which may have been distributed by them under color of Chapter 11791, Acts 1925, and claimed for services rendered, that testimony was to be taken in respect of such matter.

The court retained jurisdiction of the cause until it has acquired such information as may aid it in the full and proper distribution of the trust fund.

An appeal was taken from that order.

It is contended by Hull, Landis and Whitehair that the motion for a decree as against them was not filed within ten days after the filing of the answer. The answer was filed April 4, and the motion was filed April 15th which was not within ten days. See Section 40, Chap. 14658, Acts 1931.

Section 39 of the Act provides that at the expiration of ten days from the filing of the answer the cause shall be deemed at issue. The purpose of a motion for a decree is to test the legal sufficiency of the answer. The annotation by Mr. McCarthy to the section is that it was designed to have the same effect as a demurrer at law. The purpose of the Act was to expedite chancery procedure.

Having that purpose in view under the letter of the rule prescribed by the Act the cause was at issue as to the answer of Hull, Landis and Whitehair when the motion for a decree was filed as to them. In addition thereto the answer denied several of the material allegations of the bill,

as, for instance, that the Daytona and New Smyrna Inlet District never existed under Chapter 11791, *supra*. The answer put the complainants to the proof of the allegations of the bill as to whatever facts were necessary to support. As to all other motions for a decree or bill and answer they appear to have been made within the time prescribed by the Act.

Most of the questions presented by the answers are questions of law. Those questions relating to the persons who collected the tax, from whom and in what sums and how disbursed and in what amount, are of course questions of fact but whether those facts are important depends upon the decision as to the law under which the liability of the defendants exists. Now it seems to us that the Chancellor decided that question in favor of the complainants by sustaining their motions for a decree. So that the matter of accounting is merely a question of fact as to moneys received and disbursed. But before liability may be placed upon any one or more of the defendants there should be some evidence as to when each received the tax in his capacity as Commissioner or Trustee and the state of the law at the time of the particular transaction. Of such matters it seems to us the complainants are put to proof by the answers. All that involves the existence in fact of the Daytona New Smyrna Inlet District under Chapter 10448 prior to Chapter 11791, *supra,* and the activities of the Commissioners and Trustees under those Acts and Chapter 14503, *supra.* There is also to be determined in each case of liability when disbursements were made whether the provisions of the particular Acts under which they were made were at the time in existence as *prima facie* valid or whether this Court has already determined them to be invalid.

In the circumstances we think that evidence should be taken only as to dates of the receipts and disbursements by different Commissioners or Trustees, to whom made and in what sums and for what purpose and reasonableness of fees paid and the matter of the election under the provisions of Chapter 10448, *supra*. What the state of the law was as affecting the defendants on the date named will of course be determined by the Court as a question of law. There is no necessity for any great volume of evidence. The facts are easily ascertainable from records which may be easily obtained.

We think the case should be referred to a master to take testimony on the facts indicated.

In this view the order of the Chancellor is reversed with directions to appoint a master to take testimony upon the facts as indicated.

Reversed with instructions.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.